UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MARTHA A. CROWE             PETITIONER

v.             CIVIL ACTION NO. 4:11CV-89-S

JOE KEFFER, Warden
FMC Carswell             RESPONDENT

**MEMORANDUM OPINION**

This matter is before the court for consideration of the petition of Martha R. Crowe for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (DN 1). In 2010, Crowe filed the petition in the United States District Court for the Northern District of Texas, the district of her incarceration. While the matter remained pending, Crowe completed her term of imprisonment and was released from custody. The matter was then transferred to this court, "the convicting court, which maintains jurisdiction over [Crowe's] term of supervised release and in whose jurisdiction [Crowe] resides." N. D. Tx. Civil Action No. 4:10CV-579, DN 19. Crowe sought retransfer to the Texas court. DN 22. This court denied her motion. DN 44. The parties then filed supplemental memoranda addressing the relevant Sixth Circuit law relating to her petition. The matter now stands submitted for decision.

In 1996, a federal jury found David Crowe, Martha Crowe, and Gold Unlimited, Inc. guilty of seven counts of mail fraud, conspiracy to commit money laundering, and eight counts of money

laundering.[1] The defendants filed motions for new trial and various collateral appeals which were unsuccessful.

Because Crowe has already filed and had denied an earlier petition under 28 U.S.C. § 2255, and leave had not been granted to file a successive petition, she seeks relief under the "savings clause" of the statute, § 2255(e), which provides:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

Crowe must demonstrate "actual innocence" that is not cognizable in a second or successive petition in order to invoke the savings clause. *Wooten v. Cauley*, 677 F.3d 303, 306-07 (6th Cir. 2012). Crowe urges that an intervening change in the law establishes her actual innocence. *United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001).

Crowe contends that the United States Supreme Court's decision in *United States v. Santos*, 553 U.S. 507 (2008) establishes her innocence of the money laundering charges. In *Santos*, the Supreme Court addressed a challenge to Santos' convictions for operating an illegal lottery and for money laundering.[2] The court found that the term "proceeds," as used in the money laundering statute, 18 U.S.C. § 1956, must in some instances be limited to proof of "profits" rather than "receipts" of certain specified unlawful activity in order to avoid the possibility that the same conduct will simultaneously violate two statutes. Such a result was found to create a "merger

---

[1] The defendants were sentenced and released on bond pending their date for voluntary surrender to begin service of their sentences. The defendants failed to surrender. They were arrested in July, 2001 and returned to Kentucky. They were indicted and subsequently pled guilty to a charge of failure to appear for which they were sentenced to serve additional time. This portion of the proceedings against Martha Crowe has no relevance to this habeas petition.

[2] Santos was also convicted of various conspiracy offenses.

problem," where one statute (the money laundering statute) radically increases the sentence for a crime such as running an illegal lottery which has been "duly considered and appropriately punished elsewhere in the Criminal Code." *Santos*, 553 U.S. at 517. In the case of Santos' crimes of conviction, the lottery statute provided for a maximum five-year sentence while the money laundering statute provided for a maximum sentence of twenty years.

The concurrence by Justice Stevens in the *Santos* decision rested on a narrower ground than the plurality opinion. Thus Justice Stevens' concurrence stated the rule of law to be applied in this case. Justice Stevens did not embrace the plurality's decision that "proceeds" always means "profits" for any of the hundreds of predicate acts constituting "specified unlawful activity" under the money laundering statutes. He concluded that "the Court need not pick a single definition of 'proceeds' applicable to every unlawful activity..." *Id.* at 525 (Stevens, J., concurring).

The Sixth Circuit, in *United States v. Kratt*, 579 F.3d 558 (6th Cir. 2009), summarized the holding in *Santos*:

> "[P]roceeds" does not always mean profits...; it means profits only when the § 1956 predicate offense creates a merger problem that leads to a radical increase in the statutory maximum sentence and only when nothing in the legislative history suggests that Congress intended such an increase."

*Kratt* also made clear that the term "proceeds" has the same meaning under both § 1956 and § 1957, as both statutes were enacted as part of the Money Laundering Control Act of 1986 and cover the same subject matter in a common way. *Id.*, at 560-61.

Recently, the Sixth Circuit held that there was no merger problem when mail fraud (§1341) constituted the predicate offense under either a § 1956 or § 1957 charge. The court determined that no risk of an increased sentence existed for the defendant in that instance, as the predicate offense

- 3 -

of mail fraud carried a maximum sentence greater or equal to the money laundering offenses. *Jamieson v. United States* Criminal Action No. 09-4376 (6th Cir. Sept. 6, 2012).

The *Jamieson* case does not control here, however, as the maximum sentence for mail fraud was twenty years at the time of Jamieson's conviction in 2003, but was five years at the time of Crowe's conviction in 1996. Thus in this instance, unlike in *Jamieson*, the court *is* faced with a potential merger problem if the mailings charged in Counts 1 through 7 are indistinct from the money laundering transactions charged in counts 16 through 22 such that proof of one crime would necessarily establish the second crime.

The line of recent cases in which courts have found a merger problem under *Santos* all involved payments of various sorts which were financial transactions charged as both money laundering and mail or wire fraud. For example, in *United States v. Crosgrove*, 637 F.3d 646, 655 (6th Cir. 2011),

> [T]he payments Crosgrove received for his services as an attorney and claims adjuster, which the Government states are the only basis for upholding Crosgrove's conviction for conspiracy to commit money laundering, are also listed in the indictment as overt acts in furtherance of the mail/wire fraud conspiracy. **_United States v. Moreland, 622 F.3d 1147, 1166 (9th Cir.2010)._** The indictment itself, therefore, reveals the Government's position that the conspiracy to commit mail/wire fraud would, without any additional action by Crosgrove, also constitute a money laundering conspiracy. Crosgrove's charges of conspiracy to commit mail/wire fraud and conspiracy to commit money laundering merge, and the money laundering charge carries a far heavier statutory maximum than the mail/wire fraud charge. Further, we have found nothing in the legislative history to indicate that Congress intended this result for the predicate crime of mail/wire fraud unrelated to narcotics trafficking. Therefore, the profits definition of "proceeds" must apply to this case. Much as payments to the runners in an illegal lottery operation are essential to the operation of a lottery, and therefore are transactions involving receipts rather than profits, payments to a "claims adjuster" are essential to the operation of a fraudulent insurance scheme. Just as someone has to collect money from lottery participants in order for the lottery to exist, someone must at least purport to represent the claims department of an insurance operation in order for the operation to appear legitimate.

*Accord, United States v. Van Alstyne*, 584 F.3d 803 (9th Cir. 2009)("all of the particular counts of mail fraud for which Van Alstyne was convicted involved transmissions of checks to investors..."); *United States v. Moreland*, 622 F.3d 1147 (9th Cir. 2010)(wire transfers common to claims).

By contrast, in *United States v. Bush*, 626 F.3d 527 (9th Cir. 2010), the court found no merger problem, noting that "The circumstances surrounding the securities, wire and mail-fraud convictions were all distinct from the money laundering, thus alleviating any merger concerns...[T]he mail-fraud convictions (Counts 15-17) have no connection to the transfers – rather the mail fraud was based on Bush's promotional activities and the sending of false documents to clients..." *Id*. at 537.

The indictment in this case charges seven mailings for the purpose of executing the Crowes' scheme to defraud. Counts 1 through 4 each allege a mailing to an identified individual on January 13, 1995. Counts 5 and 6 each allege a mailing to an identified individual on January 18, 1995. Count 7 alleges a mailing on March 7, 1995 to Lim'rick Management, Nicholasville, Kentucky.

The indictment charges money laundering under § 1957 in Counts 16 through 22. Each count identifies a deposit of money into a Liberty Bank account. The deposits were made on February 15, 21, and 24 of 1995, and March 6 and 9 of 1995.

We note that the indictment charges mailings to individuals in the mail fraud counts and bank deposits in the money laundering counts. The dates of the mailings and deposits do not appear to correspond in any way. Thus, on its face, it does not appear that the acts of mailing and the acts of depositing bear any relationship to one another. They are clearly not the same transactions, in contrast to the transactions charged in *Crosgrove*, *Moreland*, and *Van Alstyne,* the cases upon which Crowe relies.

Crowe contends that the facts in *Garland v. Roy* 615 F.3d 393 (5th Cir. 2010) are indistinguishable from the case at bar. However, although the court in that case discussed generally that Garland conducted a "pyramid scheme," *Id.* at 395, it specifically noted that "In this manner, it is possible that *the same payout of proceeds as "returns" to investors* formed the basis of the mail and securities fraud convictions, as well proved the element of the money-laundering charge that Garland transacted in "proceeds" of the underlying unlawful activity. *Id.* at 396. There appears to be no such risk here, as no "returns" to investors appear to be charged in either the mail fraud or money laundering counts.

Crowe has failed to come forward with any evidence to link the mailings in count 1 through 6 with the deposits of money in Liberty Bank in Counts 16 through 22 such that there could be a possible merger problem in this case. Rather she states generally that "because every completed act of fraud alleged in the indictment as a "pyramid" or "ponzi" scheme involves depositing funds derived from predicate offenses so they could be withdrawn to pay early investors to attract new investors..." (Supp. Mem., p. 1) there must be merger with the money laundering offenses. Crowe's argument wholly fails to reference the specific counts of mail fraud charged in the indictment or to address the fact that the acts of mailing appear to bear no relation to the bank deposits in question. The court concludes that Crowe has failed to meet her burden to establish "actual innocence" of the any of the charges of conviction. *Wooten*, 677 F.3d 303. Therefore, her petition for habeas corpus under 28 U.S.C. § 2241 must be denied. A separate order will be entered this date in accordance with this opinion.

September 7, 2012

**IT IS SO ORDERED.**

Charles R. Simpson III, Judge
United States District Court

cc: Plaintiff, pro se
Counsel of Record