UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MARTHA R. CROWE                                                PETITIONER

v.                                                    CIVIL ACTION NO. 4:11CV-89-S
CRIMINAL ACTION NO. 4:95CR-13-S

JOE KEFFER, Warden
FMC Carswell                                                  RESPONDENT

## **MEMORANDUM OPINION**

This court has spent a great deal of time analyzing what has come to be known as the "*Santos* issue"[1] raised in this petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2241. Initially, the court denied the petition of petitioner Martha R. Crowe, concluding that

> Crowe has failed to come forward with any evidence to link the mailings in Count 1 through 6 with the deposits of money in Liberty Bank in Counts 16 through 22 such that there could be a possible merger problem in this case. Rather she states generally that "because every completed act of fraud alleged in the indictment as a 'pyramid' or 'ponzi' scheme involves depositing funds derived from predicate offenses so they could be withdrawn to pay early investors to attract new investors..." (Supp.Mem., p. 1) there must be merger with the money laundering offenses. Crowe's argument wholly fails to reference the specific counts of mail fraud charges in the indictment or to address the fact that the acts of mailing appear to bear no relation to the bank deposits in question. The court concludes that Crowe has failed to meet her burden to establish "actual innocence" of any of the charges of conviction. *Wooten*, 677 F.3d 303. Therefore, her petition for habeas corpus under 28 U.S.C. § 2241 must be denied.

DN 48, p. 6.

---

[1] The case of *United States v. Santos*, 553 U.S. 507 (2008) is discussed in this opinion at pages 4-5.

Crowe moved for reconsideration of the decision. Having successfully argued against the petition, the United States responded to Crowe's motion in abbreviated fashion,[2] stating that

> The payment of monies to earlier investors using funds received from later investors was a fundamental part of Crowe's illegal pyramid scheme, and such payments are of [sic] the subject of the mailings described in the Mail Fraud offenses charged in Counts 1 through 7 of the Indictment. Deposits of monies received from investors into a bank account used by the defendant to carry out the scheme, though this likely proved useful, was not fundamental and essential to the conduct of her illegal pyramid scheme.

DN 46, p. 3. Based upon this language, the court vacated its earlier decision and granted Crowe's petition for habeas corpus relief, stating, in part:

> The court remains convinced that the money laundering charges against Crowe can be distinguished from the charges in the *Crosgrove, Moreland* and *VanAlstyne* cases. However, the United States' response to Crowe's motion for reconsideration articulates a connection between the mail fraud and money laundering that is not apparent from the face of the indictment and cannot be ignored...The United States has indicated that the deposits from investors went into an account used by the defendant to pay out funds to perpetuate the scheme...We are now told that the mailings charged in this case were payments to earlier investors of proceeds obtained from later investors. The deposits of funds obtained from investors into an account which facilitated these payments are charged as money laundering...

DN 53, pp. 3-4.

The United States moved for relief from the order granting Crowe's petition. Crowe objects to the court's consideration of the motion. However, we note that we have given considerable attention to this matter, in an attempt to reach a correct result amidst fractious, and now superseded, caselaw.[3] Upon further review of the caselaw and the indictment in this case, the court has determined, for the reasons stated herein, that our initial decision denying Crowe's petition reached

---

[2]The response consisted of 2 1/2 pages, urging, essentially, that Crowe's motion was a rehash of earlier arguments.

[3]As noted in our most recent memorandum opinion, *Santos* was superseded by statute. We must engage in the exercise outlined in *Santos*, as the statute was not given retroactive application.

- 2 -

the correct result. The court will therefore incorporate much of the original decision into this opinion, and vacate the order granting the petition.

This matter came before the court for consideration of the petition of Martha R. Crowe for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (DN 1). In 2010, Crowe filed the petition in the United States District Court for the Northern District of Texas, the district of her incarceration. While the matter remained pending, Crowe completed her term of imprisonment and was released from custody. The matter was then transferred to this court, "the convicting court, which maintains jurisdiction over [Crowe's] term of supervised release and in whose jurisdiction [Crowe] resides." N. D. Tx. Civil Action No. 4:10CV-579, DN 19. Crowe sought retransfer to the Texas court. DN 22. This court denied her motion. DN 44. The parties then filed supplemental memoranda addressing the relevant Sixth Circuit law relating to her petition. The matter was then submitted for decision.

In 1996, a federal jury found David Crowe, Martha Crowe, and Gold Unlimited, Inc. guilty of seven counts of mail fraud, conspiracy to commit money laundering, and eight counts of money laundering.[4] The defendants filed motions for new trial and various collateral appeals which were unsuccessful.

Because Crowe has already filed and had denied an earlier petition under 28 U.S.C. § 2255, and leave had not been granted to file a successive petition, she sought relief under the "savings clause" of the statute, § 2255(e), which provides:

---

[4]The defendants were sentenced and released on bond pending their date for voluntary surrender to begin service of their sentences. The defendants failed to surrender. They were arrested in July, 2001 and returned to Kentucky. They were indicted and subsequently pled guilty to a charge of failure to appear for which they were sentenced to serve additional time. This portion of the proceedings against Martha Crowe has no relevance to this habeas petition.

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

Crowe must demonstrate "actual innocence" that is not cognizable in a second or successive petition in order to invoke the savings clause. *Wooten v. Cauley*, 677 F.3d 303, 306-07 (6th Cir. 2012). Crowe urges that an intervening change in the law establishes her actual innocence. *United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001).

Crowe contends that the United States Supreme Court's decision in *United States v. Santos*, 553 U.S. 507 (2008) establishes her innocence of the money laundering charges. In *Santos*, the Supreme Court addressed a challenge to Santos' convictions for operating an illegal lottery and for money laundering.[5] The court found that the term "proceeds," as used in the money laundering statute, 18 U.S.C. § 1956, must in some instances be limited to proof of "profits" rather than "receipts" of certain specified unlawful activity in order to avoid the possibility that the same conduct will simultaneously violate two statutes. Such a result was found to create a "merger problem," where one statute (the money laundering statute) radically increases the sentence for a crime such as running an illegal lottery which has been "duly considered and appropriately punished elsewhere in the Criminal Code." *Santos*, 553 U.S. at 517. In the case of Santos' crimes of conviction, the lottery statute provided for a maximum five-year sentence while the money laundering statute provided for a maximum sentence of twenty years.

The concurrence by Justice Stevens in the *Santos* decision rested on a narrower ground than the plurality opinion. Thus Justice Stevens' concurrence stated the rule of law to be applied in this

---

[5]Santos was also convicted of various conspiracy offenses.

case. Justice Stevens did not embrace the plurality's decision that "proceeds" always means "profits" for any of the hundreds of predicate acts constituting "specified unlawful activity" under the money laundering statutes. He concluded that "the Court need not pick a single definition of 'proceeds' applicable to every unlawful activity..." *Id.* at 525 (Stevens, J., concurring).

The Sixth Circuit, in *United States v. Kratt*, 579 F.3d 558 (6th Cir. 2009), summarized the holding in *Santos*:

> "[P]roceeds" does not always mean profits...; it means profits only when the § 1956 predicate offense creates a merger problem that leads to a radical increase in the statutory maximum sentence and only when nothing in the legislative history suggests that Congress intended such an increase."

*Kratt* also made clear that the term "proceeds" has the same meaning under both § 1956 and § 1957, as both statutes were enacted as part of the Money Laundering Control Act of 1986 and cover the same subject matter in a common way. *Id.*, at 560-61.[6]

Recently, the Sixth Circuit held that there was no merger problem when mail fraud (§1341) constituted the predicate offense under either a § 1956 or § 1957 charge. The court determined that no risk of an increased sentence existed for the defendant in that instance, as the predicate offense of mail fraud carried a maximum sentence greater or equal to the money laundering offenses. *Jamieson v. United States* Criminal Action No. 09-4376 (6th Cir. Sept. 6, 2012).

The *Jamieson* case does not control here, however, as the maximum sentence for mail fraud was twenty years at the time of Jamieson's conviction in 2003, but was five years at the time of Crowe's conviction in 1996. Thus in this instance, unlike in *Jamieson*, the court *is* faced with a potential merger problem if the mailings charged in Counts 1 through 7 are indistinct from the

---

[6]The defendants in this case were convicted of money laundering under § 1957 and conspiracy to commit money laundering under § 1956(h).

money laundering transactions charged in counts 16 through 22 such that proof of one crime would necessarily establish the second crime.

The line of recent cases in which courts have found a merger problem under *Santos* all involved payments of various sorts which were financial transactions charged as both money laundering and mail or wire fraud. For example, in *United States v. Crosgrove*, 637 F.3d 646, 655 (6th Cir. 2011),

> [T]he payments Crosgrove received for his services as an attorney and claims adjuster, which the Government states are the only basis for upholding Crosgrove's conviction for conspiracy to commit money laundering, are also listed in the indictment as overt acts in furtherance of the mail/wire fraud conspiracy. *United States v. Moreland,* 622 F.3d 1147, 1166 (9th Cir.2010)**.** The indictment itself, therefore, reveals the Government's position that the conspiracy to commit mail/wire fraud would, without any additional action by Crosgrove, also constitute a money laundering conspiracy. Crosgrove's charges of conspiracy to commit mail/wire fraud and conspiracy to commit money laundering merge, and the money laundering charge carries a far heavier statutory maximum than the mail/wire fraud charge. Further, we have found nothing in the legislative history to indicate that Congress intended this result for the predicate crime of mail/wire fraud unrelated to narcotics trafficking. Therefore, the profits definition of "proceeds" must apply to this case. Much as payments to the runners in an illegal lottery operation are essential to the operation of a lottery, and therefore are transactions involving receipts rather than profits, payments to a "claims adjuster" are essential to the operation of a fraudulent insurance scheme. Just as someone has to collect money from lottery participants in order for the lottery to exist, someone must at least purport to represent the claims department of an insurance operation in order for the operation to appear legitimate.

*Accord, United States v. Van Alstyne*, 584 F.3d 803 (9th Cir. 2009)("all of the particular counts of mail fraud for which Van Alstyne was convicted involved transmissions of checks to investors..."); *United States v. Moreland*, 622 F.3d 1147 (9th Cir. 2010)(wire transfers common to the wire fraud and money laundering counts of indictment).

By contrast, in *United States v. Bush*, 626 F.3d 527 (9th Cir. 2010), the court found no merger problem, noting that "The circumstances surrounding the securities, wire and mail-fraud convictions

were all distinct from the money laundering, thus alleviating any merger concerns...[T]he mail-fraud convictions (Counts 15-17) have no connection to the transfers – rather the mail fraud was based on Bush's promotional activities and the sending of false documents to clients..." *Id*. at 537.

The indictment in this case charges seven mailings for the purpose of executing the Crowes' scheme to defraud. Counts 1 through 4 each allege a mailing to an identified individual on January 13, 1995. Counts 5 and 6 each allege a mailing to an identified individual on January 18, 1995. Count 7 alleges a mailing on March 7, 1995 to Lim'rick Management, Nicholasville, Kentucky.

The indictment charges money laundering under § 1957 in Counts 16 through 22. Each count identifies a deposit of money into a Liberty Bank account. The deposits were made on February 15, 21, and 24 of 1995, and March 6 and 9 of 1995.

In the mail fraud counts, the indictment charges specific mailings to individuals. In the money laundering counts, the indictment charges specific bank deposits. The dates of the mailings and deposits do not appear to correspond in any way. The United States has represented that the charged mailings were commission checks sent to investors in furtherance of the scheme to defraud. By contrast, the money laundering counts charge numerous deposits into a Liberty Bank account. Thus, on its face, it does not appear that the acts of mailing and the acts of depositing bear any relationship to one another. The checks mailed to investors and the deposit of funds into a bank account are clearly distinct transactions, in contrast to the transactions charged in *Crosgrove*, *Moreland*, and *Van Alstyne,* the cases upon which Crowe relies, in which the same transactions were charged both as fraud and money laundering.

More specifically, *Crosgrove* involved the perpetration of a fraudulent insurance scheme. In *Crosgrove*, the money laundering counts concerned specific checks deposited by Crosgrove

which had been issued to him from member fee accounts. Those same check transactions were listed as overt acts in furtherance of the mail and wire fraud conspiracy counts.

In *Van Alstyne*, the defendant sold interests in bogus oil and gas partnerships to targeted individuals. These investors received distribution checks shortly after investing to induce then to further invest, but the sums they received were essentially the investors' own principal. Transfers of those funds to one of the limited partnerships for distribution to these investors was charged as money laundering, and was simultaneously a necessary and essential to the fraudulent scheme. With respect to a transfer which refunded the entire investment to one investor, however, the court found that the transfer was not inherent in the scheme and thus this money laundering count was found to be distinct from the mail fraud counts.

The *Moreland* case involved the perpetration of an "enormous pyramid scheme," although the details of this scheme were not recited in the court of appeals decision. In *Moreland*, the wire fraud scheme charged in the indictment referred to particular wire-transferred commissions to investors. Those same wire transfers were also charged in the money laundering counts.

Crowe contends that the facts in *Garland v. Roy* 615 F.3d 393 (5th Cir. 2010) are indistinguishable from the case at bar. That court described generally that Garland had conducted a "pyramid scheme," *Id.* at 395. However, the court's decision was based upon the finding that "it [was] possible that *the same payout of proceeds as "returns" to investors* formed the basis of the mail and securities fraud convictions, as well proved the element of the money-laundering charge that Garland transacted in "proceeds" of the underlying unlawful activity. *Id.* at 396. There appears to be no such risk here, as no "returns" to investors were charged in the money laundering counts.

- 8 -

Here, Crowe was charged with acts of mailing to investors in furtherance of the fraudulent scheme in the mail fraud counts, and with the distinctly different acts of depositing sums into a bank account in the money laundering counts.

As noted by the United States, while the act of depositing funds into the a bank account used by the defendant to carry out the scheme may have proved "useful" to Crowe, those deposits were not fundamental and essential to the conduct of her pyramid scheme, and were not in fact charged or referenced in the mail fraud counts.

Crowe suggests that this distinction between the mail fraud counts and money laundering counts is illusory, inasmuch as the essence of a pyramid scheme is the payment of purported "returns" to earlier investors with funds obtained from later investors, as described in paragraph four of the background section of the indictment. This is, of course, a true statement about the nature of ponzi schemes. Ponzi schemes are described in general terms in paragraph four of the indictment. Crowe then urges that the deposits charged in the money laundering counts were thus essential to the carrying out of the fraudulent scheme, and therefore must be found to create a "merger" problem, as outlined in *Santos*. Upon further review, the court finds that it erred in reaching this conclusion in our prior opinion.

The *Van Alstyne* case supports our conclusion that the charges against Crowe did not create a merger problem. The court in *Van Alstyne* stated that "[t]he language [in *Santos*] indicates that our analysis of the 'merger' problem in the mail fraud context must focus on the concrete details of the particular 'scheme to defraud,' rather than on whether mail fraud generally requires payments of the kind implicated in *Santos*." *Van Alstyne*, 584 F.3d at 815. In that case, the court looked critically at the three transfers which were charged as acts of money laundering. Two had been

- 9 -

made to provide two investors with purported "returns" which the court found were essential to the scheme, as the payments were necessary to induce the investors to make further investments. The third transfer was found by the court not to be a crucial element of the scheme to defraud, as it was made to reimburse an investor's full investment in satisfaction of his complaints. The court reasoned that the reimbursement did not promote the fraudulent scheme, and thus was a transaction distinct from the mail fraud scheme.

Crowe has failed to come forward with any evidence establishing that the deposits of money in Liberty Bank charged as acts of money laundering in Counts 16 through 22 were inherent in the scheme central to the mail fraud charges, standing in contrast with *Van Alstyne, Crosgrove, Moreland,* and *Garland* in which payments to investors which were clearly essential to the scheme were charged as acts of money laundering. *See, Van Alstyne*, 584 F.3d at 815. Crowe's logic that deposits of money into an account used, in part, to pay commissions to investors, must necessarily render those deposits crucial elements of the fraudulent scheme seeks to expand upon the caselaw. A more direct connection between the funds is necessary, as something more than generalities about the funding of Ponzi schemes was identified in these cases. The plurality in *Santos* found a "merger" problem to "depend upon the manner and timing of payment for the expenses associated with the commission of the crime." *Santos*, 128 S.Ct. at 2026. As we are concerned here with deposits which do not relate to the mailings charged nor are such deposits identified in connection with the fraudulent scheme described in Counts 1-7 of the indictment, we conclude that there can be no merger problem in this case.

The court concludes that Crowe has failed to meet her burden to establish "actual innocence" of the any of the charges of conviction. *Wooten*, 677 F.3d 303. Therefore, her petition for habeas

corpus under 28 U.S.C. § 2241 must be denied. A separate order will be entered this date in accordance with this opinion.

**IT IS SO ORDERED.**

June 24, 2014

**Charles R. Simpson III, Senior Judge
United States District Court**

cc: Petitioner, pro se
 Counsel of Record